747 A.2d 824 (2000)
329 N.J. Super. 335
Shawn AIKENS and Roseanne Aikens, Plaintiffs-Appellants,
v.
Kevin SCHMIDT, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted March 1, 2000.
Decided March 30, 2000.
John V. McDermott, Jr., Vernon, for plaintiffs-appellants.
Tarleton & Winkler, Franklin Lakes, for defendant-respondent (Mark Winkler, on the brief).
*825 Before Judges STERN, KESTIN and WEFING.
The opinion of the court was delivered by KESTIN, J.A.D.
Plaintiffs appeal from the trial court's order entered during a jury trial at the close of plaintiffs' case, granting defendant's motion to dismiss the complaint on entire controversy grounds. We reverse and remand for a new trial.
We are obliged, as the trial court was, to view the operative facts of the matter, to the extent they are in dispute, in the light most favorable to plaintiffs, the respondents on the motion to dismiss. Dolson v. Anastasia, 55 N.J. 2, 5, 258 A.2d 706 (1969).
The controversy between the parties traces back to April 1992, when defendant, Kevin Schmidt, retained plaintiff Shawn Aikens to paint a model home which Schmidt's corporation had built. The painting was completed in July 1992 and Aikens was paid $2500, one dollar per square foot, as had been agreed. The parties then agreed that Aikens would paint a second model home for the same price. That job was completed in late September or early October. No payments were made on account of the latter project, nor did Schmidt indicate any dissatisfaction with the work. Aikens sent Schmidt repeated bills for his work and made a number of telephone calls seeking payment.
On April 20, 1993, Aikens was painting another house in the area and saw Schmidt's truck arrive at a model home nearby. Aikens walked over and demanded payment of his unpaid bill. Schmidt refused. The parties' versions of what transpired during the exchange differed greatly; however, there appears to be no question that their conversation was marked by anger on both sides. According to Aikens, after Schmidt displayed disdain for Aikens's demands and refused payment without giving any reason based on the quality of the work performed, Aikens said he would sue for the amount due, and he returned to the work he was doing on the neighboring home. According to Schmidt, Aikens made threats and engaged in other conduct that motivated Schmidt to report their confrontation to the police.
A short time later that day, while he continued to paint the neighboring home, Aikens received a series of three visits from Vernon Township police officers who had questions concerning his conduct in the conversation with Schmidt. About three months later, Aikens was summoned to the Newton barracks of the New Jersey State Police. Upon arriving, he was searched, taken into custody, and held in a cell for more than two hours, during which time he was fingerprinted and photographed. He was charged with disorderly persons simple assault (N.J.S.A. 2C:12-1a(1)), petty disorderly persons criminal trespass (N.J.S.A. 2C:18-3), disorderly persons theft (N.J.S.A. 2C:20-3; see also N.J.S.A. 2C:20-2b(3)), and terroristic threat, a third degree crime (N.J.S.A. 2C:12-3a), all allegedly committed on April 20, 1993.
After considerable back-and-forth communication between attorneys for the parties over the matters in dispute, the charges were eventually tried in the Vernon Township Municipal Court on May 24, 1994. Aikens was found not guilty as to all. He asserts that all of the charges except for theft were dismissed on motion at the close of the State's case, and that the theft charge was dismissed after all the proofs were heard.
Two days after the acquittal, on May 26, 1994, Aikens filed a four-count "complaint on contract" in the Special Civil Part of the Law Division against Schmidt and his corporation alleging an agreement for the painting of two homes, and a balance due of $2500 plus interest, costs and attorneys fees. That case was settled on September *826 16, 1994, with the payment of $2500.
The instant suit was filed on August 25, 1995. Aikens sought damages against Schmidt and his corporation[*] for false arrest, malicious prosecution, and intentional infliction of emotional distress. Plaintiff Roseanne Aikens sued per quod. Issue was joined with the filing of the answer on December 4, 1995. The answer denied liability as to the first two counts of the complaint, false arrest and malicious prosecution, but did not specifically address the emotional distress or per quod claims. It recited seven separate defenses, none of which invoked the entire controversy doctrine.
The first mention of the entire controversy doctrine during the pendency of the case occurred in trial at the close of plaintiffs' proofs when defendant moved to dismiss the complaint on that basis. The gravamen of the argument, supported by a memorandum of law that had been submitted, was that plaintiffs were required to have prosecuted their tort claims at the same time as Aikens pursued his contract claim; and that, having failed to do so, they were precluded from suing in tort at a later time. Plaintiffs argued, inter alia, as they do on appeal, that because defendant had not pled the entire controversy doctrine as an affirmative defense he was barred from arguing its application at the time of trial. Plaintiffs emphasize in their argument on appeal that there had been ample pre-trial opportunities in status conferences and motion practice for defendant to raise the issue well in advance of trial.
After considering the parties' arguments and evaluating the issues, the trial court granted defendant's motion and dismissed the case on entire controversy grounds. Beginning her oral opinion with references to a seminal case, Cogdell v. Hospital Center at Orange, 116 N.J. 7, 560 A.2d 1169 (1989), and to Cafferata v. Peyser, 251 N.J.Super. 256, 597 A.2d 1101 (App.Div. 1991), the trial judge noted that the entire controversy doctrine was "designed to achieve economy in litigation by avoiding the waste, inefficiency, delay and expense of piecemeal and fragment[ed] litigation," and referred to "its equitable nature and concept ... that's predicated on judicial fairness," stating that "it will be invoked in that spirit." The judge distinguished Cafferata on its facts and determined, accordingly, that its rationale for excluding the application of the entire controversy doctrine did not apply to the instant matter.
The judge then went on to discuss Fees v. Trow, 105 N.J. 330, 521 A.2d 824 (1987), and Williams v. Bell Telephone Lab., Inc., 132 N.J. 109, 623 A.2d 234 (1993), the reasoning of which plaintiffs had invoked. Plaintiffs argued that those cases, dealing with affirmative defenses which were deemed waived because they had not previously been pled or otherwise raised in a timely fashion, required a denial of defendant's motion to dismiss. The judge distinguished Fees and Williams as well, on the grounds that both involved statute of limitations defenses, expressly listed in R. 4:5-4 as among those "facts constituting an avoidance or affirmative defense" which must be "specifically and separately" set forth in a responsive pleading. It was further noted that the defenses in those cases had not been raised at the trial level at all, but rather for the first time on appeal. The trial judge regarded the entire controversy issues in this case as being in a different category and consequently granted defendant's motion to dismiss Aikens's direct tort claim. She then dealt separately with Mrs. Aikens's per quod claim, dismissing it also because of its derivative nature. In the light of established standards governing the application of the entire controversy doctrine, we hold that the trial judge erred in disallowing plaintiffs' argument that defendant had waived that defense. As we held in Kopin v. Orange *827 Products, Inc., 297 N.J.Super. 353, 688 A.2d 130 (App.Div.1997):
The entire controversy doctrine is an affirmative defense. See Brown v. Brown, 208 N.J.Super. 372, 384, 506 A.2d 29 (App.Div.1986). R. 4:5-4 provides in part that "[a] responsive pleading shall set forth specifically and separately a statement of facts constituting an avoidance or affirmative defense...." "[A]n affirmative defense is waived if not pleaded or otherwise timely raised." Brown v. Brown, supra, 208 N.J.Super. at 384, 506 A.2d 29 (citing R. 4:6-7). In addition, a party's conduct can estop him/her from relying on an affirmative defense. Ibid.
Defendant did not raise the entire controversy doctrine defense in its answer to plaintiff's amended complaint. Nor did defendant raise or argue the doctrine in its primary and reply briefs filed in support of the summary judgment motion. In fact, in its opinion granting summary judgment, the trial court noted that the entire controversy doctrine was only "briefly alluded to[.]" Defendant defended this case for over three years without raising or even mentioning the doctrine. Cf. Brown v. Brown, supra, 208 N.J.Super. at 383, 506 A.2d 29 (noting that the defendant, who was barred from invoking the entire controversy doctrine, vigorously defended case for two-and-a-half years before raising the defense). Consequently, defendant waived the entire controversy defense.
[Id. at 375-76, 688 A.2d 130.]
See also Pressler, Current N.J. Court Rules, comment 2 on R. 4:30A (2000).
The procedural facts of this case militate even more compellingly than those in Kopin against application of the doctrine. There, the defendant raised the entire controversy issue for the first time on argument of a motion for summary judgment some three years after suit had been commenced and long after the defendant had filed its answer to the plaintiff's amended complaint. Here, that defense was not raised at all in the pretrial stages of the casedespite ample opportunity on various occasionsand was proposed for the first time at trial after plaintiffs had rested their case. Such a delay does nothing to advance the doctrine's fundamental policy of promoting "[j]udicial economy and efficiencythe avoidance of waste and delay," DiTrolio v. Antiles, 142 N.J. 253, 277, 662 A.2d 494 (1995) (quoting Cogdell, supra, 116 N.J. at 23, 560 A.2d 1169); indeed, it frustrates that policy. Both the court and plaintiffs were lulled into focusing on factual and legal development of the controversy for an extended period of time into trial, and to devoting precious resources to those efforts, rather than dealing with a potentially dispositive threshold issue which, if determined to have merit, would have resolved the matter much earlier, as contemplated by the doctrine and the rules embodying it.
Moreover, it is of no consequence that R. 4:5-4 requiring affirmative defenses to be specifically pled does not expressly list the entire controversy doctrine among the defenses mentioned. The absence of specific reference to the doctrine from the itemized defenses does not relegate it to an inferior or separate status in this connection. By the very terms of R. 4:5-4, using the introductory "such as," it is clear that the defenses mentioned were not intended to be an exhaustive listing, but rather to provide examples. See Bragdon v. Abbott, 524 U.S. 624, 639, 118 S.Ct. 2196, 2205, 141 L.Ed.2d 540, 558 (1998) (recognizing that the use of the introductory phrase "such as" denotes a list that is illustrative, not exhaustive).
Having determined that invocation of the entire controversy doctrine for the first time at trial was, simply, too late, we need not address the issue of the doctrine's effect upon Mrs. Aikens's per quod claim in the context of the fact that the prior action was on contract, in respect of which the per quod claim would not lie. Nor need we confront the questions of *828 whether, how and when the entire controversy doctrine may be raised or applied sua sponte by a trial court in the cause of "[j]udicial economy and efficiencythe avoidance of waste and delay." Cogdell, supra, 116 N.J. at 23, 560 A.2d 1169. It is clear in this case that even sua sponte application of the entire controversy doctrine at the close of plaintiffs' proofs would have been improper.
Reversed and remanded.
NOTES
[*] The claims against the corporation were settled prior to trial and are not implicated in this appeal.