855 A.2d 635

ALEXANDER LEVCHUK, EXECUTOR OF THE ESTATE OF VICTOR ISIGKEIT, PLAINTIFF, v. VLADIMIR JOVICH A/K/A WALTER JOVICH, AND DALMA, II, A NEW JERSEY CORPORATION, DEFENDANT, THIRD–PARTY PLAINTIFFS, v. GEORGE GLADIR, EXECUTOR OF THE ESTATE OF ANASTASIA GLADIR, AND ALEXANDER LEVCHUK, EXECUTOR OF THE ESTATE OF VICTOR ISIGKEIT, THIRD–PARTY DEFENDANTS.

IN THE MATTER OF THE PROBATE OF THE
LOST WILL OF VICTOR ISIGKEIT.

Superior Court of New Jersey
Law Division Monmouth County

Decided February 4, 2004.

*Robert C. Wines* for plaintiff and third-party defendants.

*Vincent Halleran* and *Joel Davies* (*Taft & Davies*) for defendants and third-party plaintiffs.

CAVANAGH, J.S.C.

The motion for summary judgment brought by the individual defendant-third-party plaintiff in this matter, raises the novel issue of whether an executor is barred by the entire controversy doctrine from pursuing an action against a recipient of inter vivos monetary transfers from a decedent, if the claim was not included in a prior probate proceeding involving both parties.

On June 14, 1995, Victor Isigkeit executed a last will and testament which bequeathed his residence in Howell Township to his live-in companion, Anastasia Gladir, divided the remainder of his estate among six nieces, and appointed his friend and attorney, Alexander Levchuk, as the Executor. On December 26, 1998, Isigkeit died at the age of 95. In February 1999, a summary proceeding was commenced in the Chancery Division by the potential executor, seeking to admit a copy of the 1995 will for

probate, since the original document could not be located. Walter Jovich, a purported caregiver for the decedent and his companion during their final senescent years, filed an answer and two-part counterclaim. The initial count sought probate of a document executed by Isigkeit in 1998, which bequeathed the decedent's "worldly possessions" to Jovich, conditioned upon his use of those assets to care for Gladir. Tethered to the probate claim was a request for damages due to defamation, against the proposed executor of the 1995 document.

On March 27, 2001, Judge Clarkson S. Fisher, Jr., J.S.C. conducted a hearing in the probate matter which included consideration of the "Power of Attorney" submitted by Jovich. He determined that Jovich was engaged in a confidential relationship with the decedent at the time the second document was drawn, and declined to admit the 1998 instrument to probate, since the individual defendant was unable to effectively rebut the presumption of undue influence. Judge Fisher dismissed the initial count of the counterclaim, admitted the copy of the 1995 will for probate, and transferred the defamation action to the Law Division.[1]

While the probate petitions were pending, a second complaint was filed in the Chancery Division by the proposed executor, as the attorney for the guardian of the decedent's incompetent companion. The additional pleading asserted that Jovich had insidiously obtained substantial monies from the decedent, who was infirm and mentally debilitated, and sought return of the funds to the estate. After the copy of the 1995 will was admitted to probate, the second complaint was amended to add the benefi-

---

[1] Parenthetically, it is herein noted that the probate action was instituted as a summary proceeding under R. 4:67–1, and commenced by filing an order to show cause. Despite the prohibition in R. 4:67–4 against filing a counterclaim without leave of court, the Vice–Chancellor effectively granted permission for the responsive pleading nunc pro tunc on the hearing date, since the initial count sought to admit a second instrument for probate.

ciaries of the estate as named plaintiffs. Jovich also filed a counterclaim in the supplemental action, contending that the funds sought by the Executor were either gifts to encourage him to continue to provide services as a caretaker, or in the alternative, he earned the funds based on the concept of quantum meruit.

In October of 2001, the second complaint was transferred to the Law Division, the decedent's companion and her guardian were dismissed as parties due to her death in November 2000, and a lis pendens, which had been filed by the Executor against property owned or controlled by Jovich or the corporate defendant, was discharged. Subsequently, interlocutory orders were entered in the Law Division substituting the Executor as the proper plaintiff in this action and consolidating it with the defamation claim.

Although a previous request by the plaintiff for summary judgment was denied, the motion judge memorialized within that order the concession by Jovich that he had received $441,431.73 from the decedent. Again, during the pendency of the current motion, he acknowledged receipt of the aforementioned funds over a period of approximately nine months during 1997 and 1998, although he asserts that his services were provided over a much longer period of time.[2]

The moving party herein seeks to preclude the Executor from pursuing the current claim for the return of monies to the estate, predicated upon the entire controversy doctrine. He asserts that the existence of the monetary transfers was apparent to the Executor at the time of the probate matter, as evidenced by the claims in the second complaint filed while the probate action was pending. The failure of the estate to pursue a claim in the

---

[2] It should also be noted that in April 1997, the decedent conveyed a piece of property in Howell Township to the corporate defendant. The closing statement from that transaction notes that part of the consideration for the purchase price was related to the care provided by Jovich for the seller during the prior eighteen months, and the document further indicates that Jovich would continue to take care of the seller for the balance of his life.

original controversy involving both parties is submitted to require a dismissal of the present matter based upon the preclusionary doctrine in *R.* 4:30A.

The fundamental principle of the entire controversy doctrine requires that the adjudication of a legal controversy should occur in one litigation, in only one court. Accordingly, all parties involved in the litigation should, at the very least, present in that proceeding all of the claims and defenses that are related to the underlying controversy. *Cogdell v. Hosp. Ctr. at Orange*, 116 *N.J.* 7, 15, 560 *A.*2d 1169, 1172–73 (1989); *Kopin v. Orange Prod., Inc.*, 297 *N.J.Super.* 353, 374, 688 *A.*2d 130, 141 (App.Div.1997). The confluence of goals created by the concept includes encouraging comprehensive and conclusive determinations, avoidance of fragmentation, and the promotion of party fairness and judicial economy. *Bonaventure Int'l., Inc. v. Spring Lake*, 350 *N.J.Super.* 420, 440, 795 *A.*2d 895, 906–07 (App.Div.2002). *See generally, Harley-Davidson Motor Co., Inc. v. Advance Die Casting, Inc.*, 150 *N.J.* 489, 496–97, 696 *A.*2d 666, 670 (1997); *Mystic Isle Development Corp. v. Perskie & Nehmad*, 142 *N.J.* 310, 322, 662 *A.*2d 523, 529 (1995); *Falcone v. Middlesex County Med. Soc.*, 47 *N.J.* 92, 219 *A.*2d 505 (1966).

Prior to its articulation in N.J. Const. art. VI, § 3, ¶ 4 of the 1947 New Jersey Constitution, the preclusionary principle relied upon herein, developed within our common law. *Cogdell, supra,* 116 *N.J.* at 15, 560 *A.*2d at 1172–73; *Smith v. Redtop Taxicab Corp.*, 111 *N.J.L.* 439, 440–41, 168 *A.* 796, 797 (E. & A.1933); *Mitchell v. Procini*, 331 *N.J.Super.* 445, 752 *A.*2d 349 (App.Div. 2000).

Ultimately, the concept was formulated into a court rule, which in its present form, is memorialized in *R.* 4:30A:

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by *R.* 4:64–5 (foreclosure actions) and *R.* 4:67–4(a) (leave required for counterclaims or cross-claims in summary actions).

In 1998, the language in the prior version of the rule was amended to delete the section concerning non-joinder of parties, limiting the application of the current language to non-joinder of

claims. At the same time, the Supreme Court also adopted *R.* 4:29–1(b), which permits a trial court on its own motion to order joinder of any person subject to the jurisdiction of the court whose existence was disclosed by the notice requirements of *R.* 4:5–1(b)(2), thereby shifting the consideration for preclusion of claims outside the present rule.

The palpable intent of the present language is to maintain the requirement that a party must join all relevant claims against an adversary in one action, when those claims are related to and part of the same underlying controversy. *Aetna Ins. Co. v. Gilchrist Bros., Inc.,* 85 *N.J.* 550, 557, 428 *A.*2d 1254, 1257 (1981). The concept of claims joinder, which has evolved over many years and remains trenchant today, mandates that piecemeal litigation should not burden our court system, and that an adjudication should occur in one proceeding before one court.

While the entire controversy doctrine has enjoyed a venerable status in our jurisprudence, it has not evolved without a cautionary caveat tempering its invocation. A trial court must always remain cognizant that the doctrine is an equitable concept predicated upon the polestar of judicial fairness, and it may only be invoked in that spirit. *Cogdell, supra,* 116 *N.J.* at 28, 560 *A.*2d at 1179; *Crispin v. Volkswagenwerk, A.G.,* 96 *N.J.* 336, 343, 476 *A.*2d 250, 253–54 (1984) (Handler, J., concurring); *Reno Auto Sales, Inc. v. Prospect Park Savings & Loan Ass'n,* 243 *N.J.Super.* 624, 630, 581 *A.*2d 109, 112 (App.Div.1990). As recently as last year, the Supreme Court emphasized that the current rule governing application of the doctrine to joinder of claims remains dependent upon the fundamental requirement of fairness, by directing that equitable considerations "should ease the path upon which the doctrinal bar travels." *K–Land Corp. No. 28 v. Landis Sewerage Auth.,* 173 *N.J.* 59, 72, 800 *A.*2d 861, 869 (2002); *See also, Joel v. Morrocco,* 147 *N.J.* 546, 555, 688 *A.*2d 1036, 1041 (1997); *Hillsborough Township Bd. of Educ. v. Faridy Thorne Frayta, P.C.,* 321 *N.J.Super.* 275, 284, 728 *A.*2d 857, 861 (App.Div.1999). Acting in congruence with the inherent requirement of fairness is the principle that preclusion under the doctrine is a remedy of last resort.

*Olds v. Donnelly,* 150 *N.J.* 424, 428, 696 *A.2d* 633, 635–36 (1997); *Mitchell v. Procini, supra,* 331 *N.J.Super.* at 445, 752 *A.2d* at 349.

While our case law has consistently articulated obeisance to the general standard reflected in the doctrine, the quintessential requirement of fundamental fairness has engendered a circumspect judicial approach when considering the foreclosure of our courts to litigants seeking redress for legitimate controversies. In *Irish Pub v. Stover,* 364 *N.J.Super.* 351, 835 *A.2d* 1257 (App.Div. 2003), the Appellate Division provided a recent example of the inclination of our higher courts to avoid fostering a formulaic application of the preclusionary principle, other than in the most compelling circumstances. The court determined therein that the entire controversy doctrine should not be applied to post-judgment motions to enforce litigants rights based upon an inadequate demonstration that the component of party fairness had been established.

 When evaluating the "pillar" of fundamental fairness, a court should initially consider whether the claimant had a sufficient opportunity to litigate the challenged claim in the original action. *Hillsborough Township. Bd. of Educ., supra,* 321 *N.J.Super.* at 284, 728 *A.2d* at 861. To establish the threshold requirement mandating a quality forum in the first proceeding, it must be demonstrated that the initial proceeding provided a full and fair opportunity to litigate the challenged issues and also presented the same remedial opportunities available in the second forum. Without this sine qua non, the compulsory requirement of judicial fairness would be vitiated. *Thornton v. Potamkin Chevrolet,* 94 *N.J.* 1, 5, 462 *A.2d* 133, 134–35 (1983).[3]

In 1996, the Appellate Division evaluated this critical requirement in an instructive fashion. After the dismissal of a second action against a partnership entity, predicated on the conduct of one of the members, the Appellate Division reinstated the claim.

---

[3] The language in *R.* 4:30A which creates an exception for summary proceedings, is a paradigm of the significance of the quality-of-forum principle.

Judge Pressler underscored the procedural anomaly which would have developed had the dismissal been upheld, by pointing out that the original proceeding was a limited application by an executor to settle the estate account under *R.* 4:87. Since that truncated action did not provide an adequate basis within which to litigate the liability of the executor's employer for his professional conduct, the court determined that invocation of the entire controversy doctrine would violate the quality-of-forum principle. *Perry v. Tuzzio,* 288 *N.J.Super.* 223, 228, 672 *A.*2d 213, 215 (App.Div. 1996).

The initial step herein, therefore, is to determine whether application of the entire controversy doctrine is appropriate, by examining the earlier proceeding, and determining whether the contested matter provided the plaintiff with a quality forum.

*Rule* 4:82, which governed the probate process, states in pertinent part:

> Unless specifically authorized by order or judgment of the Superior Court, and then only in accordance with such order or judgment, the Surrogate's Court shall not act in any matter in which ... (2) a doubt arises on the face of a will or a will has been lost or destroyed ....

The procedure established to obtain relief under the prior reference requires a review of the successive rules. *Rule* 4:83 (emphasis added) provides:

> Unless otherwise specified, all actions in the Superior Court, Chancery Division, Probate Part, shall be brought in a *summary manner* by the filing of a complaint and issuance of an order to show cause pursuant to *R.* 4:67. The Surrogate, as Deputy Clerk, may fix the return date of the order to show cause and execute the same unless the procedure in a particular case raises doubt or difficulty. Service shall be made and the action shall proceed thereafter in accordance with that rule.

*Rule* 4:84–1 provides:

> In any case in which, under *R.* 4:82, the Surrogate's Court may not act, any person in interest may file a complaint and apply for an order directed to all other interested parties to show cause why the relief sought should not be granted. Service shall be as provided by *R.* 4:67–3.

*See also, N.J.S.A.* 3B:2–4, which references the utilization of a summary proceeding utilized by a fiduciary in accordance with the language in this statute.

> *Rule* 4:67 summary actions are, by definition, designed "to accomplish the salutary purpose of swiftly and effectively disposing of matters which lend them-

selves to summary treatment[.]" Pressler, *Current N.J. Court Rules,* comment on
*R.* 4:67–1 (1995). The inclusion of issues that require plenary consideration is
inimical to the design of the rule. It is for this reason that no counterclaim or
cross-claim may be asserted without leave of court. *R.* 4:67–4(a).

[*Perretti, Jr. v. Ran–Dav's County Kosher, Inc.,* 289 *N.J.Super.* 618, 623, 674 *A.*2d
647, 649 (App.Div.1996).]

The plaintiff in the original probate proceeding commenced his
action by way of an order to show cause pursuant to *R.* 4:67, a
process clearly intended by our rules to initiate a limited proce-
dure, not a comprehensive determination. The constrictive nature
of the proceeding was confined to determining which document
should be admitted for probate. Clearly, the process did not
envision resolution of a claim to recapture funds transferred by
the decedent during his lifetime. Although the current matter
provides a factual pattern which is distinguishable from *Perry,*
since both parties were present before the Chancery Division in
the probate matter, Judge Pressler's assessment in *Perry* that the
original forum must be adequate to litigate the specific claim
challenged in the second proceeding, remains cogent in this action.

■ This court determines that the probate procedure in this
matter qualifies as a summary action which is contemplated within
the exclusionary language set out in *Rule* 4:30A. The original
petition sought only a judgment of probate for the copy of the will
submitted in the ad damnum clause. To disqualify an executor
from later pursuing a viable claim on behalf of the estate, would
violate both the language and intent of the Rule, as well as
contravening the principle which mandates a quality forum in the
initial procedure. While the aforementioned language does not
constitute a blanket prohibition, it underscores judicial acceptance
of the principle that the constrictive procedure does not necessari-
ly lend itself to resolution of all issues between the involved
parties. A contrary determination would result in the application
of the doctrine in this matter as "a trap for the unwary rather
than a shield for the judicial system and its litigants against the

unfair burden of multiple related separate actions." *Perry, supra,* 288 *N.J.Super.* at 231, 672 *A.*2d at 217.

Additional support for this court's disinclination to invoke the entire controversy doctrine in the instant circumstances, may be gleaned from a review of the juridical principle of standing, which dovetails into the reasoning of the quality forum requirement. Standing refers to a plaintiff's ability or entitlement to maintain an action before a court. In order to possess standing, a plaintiff must have a sufficient stake in the outcome of the litigation, and a real adverseness with respect to the subject matter, and there must be a substantial likelihood that the plaintiff will suffer harm in the event of an unfavorable decision. *New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n,* 82 *N.J.* 57, 67, 411 *A.*2d 168, 171–73 (1980); *In re Quinlan,* 70 *N.J.* 10, 355 *A.*2d 647 (1976).

Until and unless the Executor in this matter perfected his appointment by probating a copy of the will, he lacked standing to pursue a claim for the return of monies to the Estate. *See N.J.S.A.* 3B:3–18 and *N.J.S.A.* 3B:10–19. Our courts have long acknowledged that the capacity of an executor to initiate a lawsuit is dependant upon and subject to the admission of a document for probate, and his or her status as the real party in interest in litigation involving the estate does not mature until probate is accomplished. *Thiefes v. Mason,* 55 *N.J.Eq.* 456, 37 *A.* 455 (Ch. 1897); *In re Acker's Will,* 70 *N.J.Eq.* 669, 62 *A.* 556 (Prerog.Ct. 1905). *See also,* 5 *New Jersey Practice, Wills and Administration* § ——, at 307 (Alfred C. Clapp) (rev. 3d ed. 1982), and 7 *New Jersey Practice, Wills and Administration* § 1022, at 137 (Alfred C. Clapp & Dorothy G. Black) (rev. 3d ed. 1984). The entire controversy doctrine was never designed to bar competent claims which were either unknown, unarisen, or unaccrued at the time of the original action. *Harley-Davidson Motor Co., supra,* 150 *N.J.* at 494, 696 *A.*2d at 669; *Bonaventure Int'l, supra,* 350 *N.J.Super.* at 440, 795 *A.*2d at 906–07. Thus, an executor's lack of standing to pursue a claim for reimbursement until a will is probated com-

ports with this court's conclusion to deny invocation of the preclusionary doctrine.

Even if the entire controversy doctrine were substantively applicable in the case under review, the defendant would be impaired by critical procedural problems. Without question, the doctrine is an affirmative defense. *Kopin, supra,* 297 *N.J. Super* at 375, 688 *A.*2d at 141; *Brown v. Brown,* 208 *N.J.Super.* 372, 384, 506 *A.*2d 29, 35 (App.Div.1986). Only three years ago, the Appellate Division underscored that the failure to specifically list the preclusionary doctrine within the defenses set forth in *R.* 4:5-4 does not alter its status as being subsumed therein, and the demand to invoke the concept would be barred as a result of the failure to specifically reference the doctrine in the answer. *Aikens v. Schmidt,* 329 *N.J.Super.* 335, 747 *A.*2d 824 (App.Div.2000).

While this court acknowledges that the procedural issue in *Aikens* was not raised until after the trial was completed, and a similar challenge in *Kopin* was considered only after a failure to articulate the issue within a summary judgment motion, the expansive passage of time involved in this matter leads this court to conclude that the same procedural result would logically ensue.

An amended complaint in this matter was filed in April 2001, and counsel for the defendant filed a stipulation extending time to file a responsive pleading in May of that same year. The present motion for summary judgment was filed more than two years after the stipulation was filed. As Judge Kestin observed in *Aikens, supra,* 329 *N.J.Super.* at 340, 747 *A.*2d at 827, the passage of significant time without focus on the entire controversy doctrine was inconsistent with the position that it should be invoked for reasons of judicial economy, since the defendant's conduct did nothing to advance that fundamental principle.

In addition to the time lapse, the moving party herein is impacted adversely by an additional procedural problem. An affirmative defense is waived if not pleaded or otherwise timely raised. *R.* 4:6-7. The amended answer in this matter enumerates a general reservation of the right to assert "all affirmative defens-

es." Clearly, this vague and non-specific inclusion does not comport with the intent or mandate of the salient court rule. The amalgam of excessive delay in raising the issue and the failure to include specific language in the responsive pleading would present the defendant with an insurmountable procedural hurdle, even if the substantive argument was compelling.

The motion for summary judgment by the individual defendant third-party plaintiff is denied.