28 A.3d 856 (2008)
422 N.J. Super. 343
Dora BAILEY and Carol Bailey, w/h, Plaintiffs,
v.
WYETH, INC., Wyeth Pharmaceuticals, Inc., Pfizer, Inc., and Pharmacia & Upjohn Co., Defendants.
Loretta DeBoard, Plaintiffs,
v.
Wyeth, Inc., Wyeth Pharmaceuticals, Inc., Pfizer, Inc., and Pharmacia & Upjohn Co., Defendants.
Bette Kositsky and Mark Kositsky, w/h, Plaintiffs,
v.
Wyeth, Inc., Wyeth Pharmaceuticals, Inc., Pfizer, Inc., and Pharmacia & Upjohn Co., Defendants.
Nos. L-0999-06 MT, L-1 147-06 MT, L-1019-06 MT
Superior Court of New Jersey, Middlesex County, Law Division.
Decided March 7, 2008.
Argued February 8, 2008 and February 27, 2008.
*858 Esther E. Berezofsky, Cherry Hill, and Kevin Haverty for plaintiffs (Williams, Cuker & Berezofsky, attorneys) and Richard S. Lewis (Cohen, Milstein, Hausfeld & Toll, PLLC) of the Washington, D.C. bar, admitted pro hac vice.
Lauren E. Handler, Morristown, (Porzio Bromherg & Newman, P.C.) and George E. McDavid, Princeton, and Daniel K. Winters (Reed Smith LLP) attorneys for defendants Wyeth, Inc., and Wyeth Pharmaceuticals, Inc.
David J. Cooner and Gita F. Rothschild, Newark, attorneys for defendants Pfizer and Pharmacia & Upjohn Co. (McCarter & English LLP, attorneys) and Jay P. Mayesh (Kaye Scholer LLP) of the New York bar, admitted pro hac vice.
HAPPAS, J.S.C.

I. Introduction
Presently before this Court are three choice-of-law motions filed by defendants, Wyeth, Inc., Wyeth Pharmaceuticals, Inc., ("Wyeth"), Pfizer Inc., and Pharmacia & Upjohn Co., ("Upjohn") (collectively "defendants"), to apply non-New Jersey law to three separate actions for damages allegedly caused by the ingestion of Premarin®, Provera® and Prempro.
Before considering the merits of these choice of law motions, the court must determine if the issue has been waived or is timely.[1] For the reasons set forth below, the court finds that defendants failed to timely file the instant choice-of-law motions.

II. Factual Background
The three hormone replacement therapy ("HRT") products involved are Premarin, Provera, and Prempro. Premarin, a synthetic estrogen drug manufactured and distributed by Wyeth, was prescribed to treat menopausal symptoms. Provera, a synthetic progestin produced by Upjohn, was prescribed to reduce the risk of endometrial hyperplasia associated with taking estrogen alone. Prempro is a Wyeth product, which contains estrogen and progestin in a single capsule.
All HRT cases in New Jersey have been designated as a mass tort and assigned to Middlesex County for coordinated and centralized management by order of the Supreme Court of New Jersey. To facilitate discovery and case management, the cases were separated into groups. Group One, the bellwether group, consisted of twenty cases identified in Schedule A of the court order dated April 21, 2006. The three cases involved in the instant motions, and one under appellate review, are the only cases remaining in Group One.

a. Bailey v. Wyeth, Inc.

On May 5, 2004, plaintiffs filed their complaint commencing this suit. On June 23, 2004 and June 24, 2004, Wyeth and Upjohn, respectively, filed their answers. Wyeth specifically identified public policies of New Jersey as part of its thirty-sixth affirmative defense. Upjohn named the New Jersey Product Liability Act in its fortieth and forty-first defenses. On April 6, 2005, plaintiff served completed fact sheets on defendants, followed by filing an amended complaint on June 21, 2005. Defendants' answers to the amended complaint *859 were filed in July 2005. Again, New Jersey law was expressly invoked in their affirmative defenses. Wyeth cited New Jersey public policy in its thirty-sixth defense. Upjohn invoked New Jersey law in nine different defenses.[2] No other state law was identified, nor was the choice-of-law defense raised.[3]
Dora's deposition was taken on June 22, 2006. Pursuant to the court order dated June 19, 2007, the parties retained experts, served expert reports and deposed, the experts.[4] On December 7, 2007, Wyeth filed the instant motion to apply Texas law. Thereafter, on December 17, 2007, Upjohn filed a motion in support of and joining Wyeth's choice-of-law motion.[5]
Plaintiffs presently reside in Texas. Carol Bailey is Dora Bailey's spouse. Dora's doctors prescribed HRT to her from 1989 through 2002. From 1989 through 1993 plaintiffs lived in Missouri. During this period of time, Dora was prescribed and ingested Premarin and Provera. In 1993, plaintiffs moved to Arkansas, where they resided for the next seven years. On April 15, 1996, Dora's doctor switched her prescriptions from Premarin and Provera to Prempro. At the end of 2000, plaintiffs relocated to Texas. Dora continued taking Prempro until May 28, 2002, when she was diagnosed with ductal breast cancer. Her diagnosis, surgery and subsequent treatment occurred in Texas.

b. DeBoard v. Wyeth, Inc.

On July 17, 2003, plaintiff filed her complaint commencing this suit. On October 1, 2003, she filed an amended complaint. Wyeth filed its answer on November 7, 2003, invoking New Jersey law in its twenty-seventh and forty-first affirmative defenses. Upjohn filed its answer on January 21, 2004, citing New Jersey law in its thirty-sixth affirmative defense. In February 2005, plaintiff provided an initial fact sheet. On February 7, 2005, plaintiff filed a second amended complaint. Upjohn filed its answer to the second amended complaint on February 24, 2005 and Wyeth filed its answer on February 25, 2005. Again, New Jersey law was expressly invoked in their affirmative defenses. Wyeth cited New Jersey public policy in its thirty-sixth defense. Upjohn invoked New Jersey law in eight different affirmative defenses.[6] No other state law was identified, nor was the choice-of-law defense raised.[7]
DeBoard's deposition was taken on July 13, 2006. Pursuant to the court order *860 dated June 19, 2007, the parties retained experts, served expert reports, and deposed the experts.[8] An amended fact sheet was served on October 30, 2006. On December) 19, 2007, Upjohn filed the instant motion., to apply Kentucky law.[9] Thereafter, Wyeth filed a similar choice-of-law motion on January 9, 2008.
DeBoard resides in Kentucky. From June 1991 through 2001 she was prescribed and ingested HRT in Kentucky. Specifically, she ingested Premarin and Provera from June 1991 to February 1996. In February 1996, her doctor switched her prescriptions from Premarin and Provera to Prempro. On September 6, 2001, she was diagnosed with breast cancer. Her diagnosis and subsequent treatment occurred in Kentucky.

c. Kositsky v. Wyeth, Inc.

On June 29, 2004, plaintiffs filed their complaint commencing this suit. On October 7, 2004, Upjohn filed its answer. Wyeth filed its answer on November 3, 2004, in accordance with the stipulation extending time to answer the complaint. Wyeth specifically identified New Jersey law in eight of its separate defenses.[10] Upjohn invoked New Jersey law in three of its defenses: nineteenth, fortieth, and forty-first. No other state law was mentioned nor was the choice-of-law defense raised.[11]
Bette Kositsky's deposition was taken on June 1, 2006. Pursuant to the court order dated June 19, 2007, the parties retained experts, served expert reports, and deposed the experts.[12] On December 19, 2007, Upjohn filed the instant motion to apply Pennsylvania law.[13] Thereafter, Wyeth filed a similar choice-of-law motion on January 9, 2008.
Plaintiffs reside in Florida. Mark Kositsky is Bette Kositsky's spouse. Prior to 2003, plaintiffs were residents of Pennsylvania. Ms. Kositsky's doctors in Pennsylvania prescribed HRT to her from 1991 through 2002. Specifically, she ingested Premarin and Provera from 1991 to 1998. During 1998, her doctor switched her prescriptions from Premarin and Provera to Prempro. On July 14, 2002, she was diagnosed with breast cancer. Her diagnosis and subsequent treatment occurred in Pennsylvania.

III. Analysis
Early determination of which state law governs a case is essential for judicial economy, efficiency and fairness to the parties. See Pressler, Current N.J. Court Rules, comment 6.1 on R. 4:5-4 (2008) ("As *861 a procedural matter, it is clear that an issue of the applicability of foreign law should not only be raised before trial but requires decision before trial") (citations omitted). The court has the discretion to consider the applicability of foreign law when the issue is raised although not previously pled. See Rowe v. Hoffinann-La Roche Inc., 383 N.J.Super. 442, 450-51, 892 A2d 694 (App.Div.2006), rev'd on other grounds, 189 N.J 615, 917 A.2d 767 (2007) (affirming that motion judge acted within her discretion to consider and grant choice-of-law motion). In Rowe, the defendants did not assert Michigan products liability law as a defense in their answer. Id. at 450, 892 A.2d 694. The issue was subsequently raised in a motion for summary judgment. Id. at 448, 892 A.2d 694. The New Jersey Supreme Court noted that "after denying Rowe's allegations, Hoffmann moved for summary judgment, seeking dismissal of the lawsuit." Rowe, supra, 189 N.J at 619, 917 A.2d 767. Neither the appellate court opinion nor the New Jersey Supreme Court opinion reveal how much time passed between the defendants' filing their answer and the motion for summary judgment. Id. at 770, 917 A.2d 767; Rowe, supra, 383 N.J.Super. at 448-51, 892 A.2d 694. Nor was there any indication whether discovery had commenced or if expert reports were served. Ibid. The opinions in Rowe do not address whether the granting of defendants' application to apply foreign law would cause substantial prejudice, unfair surprise, or undue interference with the administration of justice.
The Court Rules require parties to "set forth specifically and separately a statement of facts constituting an avoidance or affirmative defense." R. 4:5-4. The rule sets forth an illustrative, not exhaustive, list of common affirmative defenses. See Pressler, supra, comment 1.2.1 on R. 4:5-4. "An affirmative defense is waived if not pleaded or otherwise timely raised." Brovm v. Brown, 208 N.J.Super 372, 384, 506 A.2d 29 (App.Div.1986) (finding entire-controversy defense waived, in marital tort action, when made on eve of trial after two-and-a-half years of litigation). The pleading requirement provides notice of all issues, thus avoiding later prejudice or surprise.
Exceptions to the absolute waiver of an affirmative defense "have been made when public policy demands it and there is no unfair surprise, substantial prejudice or undue interference with the administration of justice." Harduwicke v. Am. Boychoir School, 368 N.J.Super. 71, 98, 845 A.2d 619 (App.Div.2004) (citing Rivera v. Gerner, 89 N.J 526, 536, 446 A.2d 508 (1982)), aff'd in part and modified in part, 188 N.J. 69, 902 A.2d 900 (2006). Presenting a defense to the jury after summation is prejudicial and an unfair surprise. Rivera, supra, 89 N.J at 536, 446 A.2d 508. A defense which could be anticipated by plaintiffs and is asserted prior to the completion of discovery or assignment of a trial date is unlikely to be prejudicial or a surprise. See Hardwicke, supra, 368 N.J.Super. at 9&-99, 845 A 2d 619 (permitting defense of charitable immunity to be pled in answer to amended complaint, sixteen months after commencement of litigation).
Principles of equity and public policy can justify departing from the rule of waiver. See Ahammed v. Logandro, 394 N.J.Super 179, 190-93, 925 A.2d 733 (App.Div.2007) (permitting Workers' Compensation Act to be raised as affirmative defense ten days before trial because "plaintiffs counsels' behavior led defendant's counsel to the reasonable belief that no such defense was available"); see also Cipriani Builders, Inc. v. Madden, 389 N.J.Super 154, 173-74, 912 A.2d 152 (App. Div.2006) (aUowing statute of limitations *862 defense, pled in answer, to be successfully raised "shortly after the completion of discovery" because discovery was necessary in suit for defamation to determine availability of defense). When enforcement of waiver "would be inconsistent with substantial justice," courts will relax the rule of waiver. Douglas v. Harm, 35 N.J. 270, 281, 173 A.2d 1 (1961) (finding determination of contributory negligence in pedestrian uninsured auto accident necessary in interest of substantial justice).
A defense pled may nonetheless be waived if the defendant's conduct is inconsistent with reliance on the defense. See Williams v. Bell Tel Lab., 132 N.J. 109, 623 A.2d 234 (1993) (finding statute of limitations defense waived after three-anda-half years of litigation). The assertion of a new defense is generally prejudicial after substantial time, energy and money have been spent preparing for trial. Id. at 119-20, 623 A.2d 234; see also White v. Karlsson, 354 N.J.Super. 284, 290, 806 A.2d 843 (App.Div.), cetif. denied, 175 N.J. 170, 814 A.2d 635 (2002) (barring assertion of statute of limitations defense before trial but after defense counsel had participated in arbitration, answered interrogatories and engaged in discovery). An untimely defense that causes undue prejudice and is not counter-balanced by public policy or the administration of justice will be barred whether asserted before or after trial. See White, supra, 354 N.J.Super. at 290, 806 A.2d 843 (comparing pre-trial assertion of a new defense with post-verdict assertion in Williams, supra, 132 N.J. at 119-20, 623 A.2d 234).
The entire controversy doctrine was barred as a defense after "[t]he court and plaintiffs were lulled into focusing on factual and legal development of the controversy for an extended period of time into trial and to devoting precious resources to those efforts." Aikens v. Schmidt, 329 N.J.Super. 335, 340, 747 A.2d 824 (App. Div.2000). In Aikens, the defense was first mentioned after the plaintiffs had rested their case. Id. at 340, 747 A.2d 824. The court found that the defendants had "ample opportunity" during pre-trial stages to raise the defense yet waited "too late" and thus waived the defense. Id. at 340-11, 747 A.2d 824.

IV. Discussion
The relevance of the pleading and waiver rule of affirmative defenses to a choice-of-law issue is apparent by its inclusion in the comment section of the court rules. Determining whether choice-of-law is in fact an affirmative defense within Rule 4:5-4 is unnecessary because the court in Rowe affirmed the motion judge's discretion to consider the defense although not previously pled. This court in exercising its discretion finds the instant motions to be untimely.
Choice of law is an important aspect of mass tort litigation. The Mass Torts home page on the New Jersey Courts' website provides the bench, bar and public with helpful information and resources, including a comprehensive manual. See http://Mww.judiciary.state.nj.us/mass-tort/ index.htm (last visited Mar. 6, 2008). Attorneys handling mass tort cases in New Jersey should be well acquainted with the resource manual. The manual states, "factual and legal issues should be identified as early as possible, starting in most cases at the initial pre-trial conference. Legal issues should be resolved as soon as feasible." New Jersey Judiciary, New Jersey Mass Tort (Non-Asbestos) Resource Book 16 (3d ed. 2007), http://www.judiciary.state. nj.us/masstort/MassTortSOP_NonAsbestos November2007WebVersion.pdf (citing Alexander B. Aikman, Managing Mass Tort Cases: A Resource Book for State Trial Court Judges 53 (1995)). Choice of law is *863 clearly one of the legal issues intended to be identified as early as possible and resolved as soon as feasible.
During pre-trial conferences "[t]he defense should identify the specific allegations and claims it disputes, the specific defenses it will raise and the proof it will offer." David F. Herr, Annotated Manual for Complex Litigation 71 (4th ed. 2007). "There are many significant differences among state product liability laws . . . [t]he application of those rules is often difficult and very different results may occur in different states." Morton F. Daller, Product Liability Desk Reference: A Fifty-State Compendium ix (2007) (emphasis added). The differences among product liability laws of the states have been cited by courts overturning certification of a national class of plaintiffs.[14]
In mass tort cases "the complexity of legal and factual issues makes judges especially dependent on the assistance of counsel." Herr, supra, at 38. To facilitate the organization of hundreds of complex mass tort cases for trial, it is imperative that counsel timely advise the court of all choice-of-law issues. In order to fully and properly administer these cases, the court must manage the case from discovery through trial in an orderly and fair fashion. Properly managing and administering cases in a just and fair manner is difficult, if not impossible, when the court is not properly informed of all legal issues in dispute prior to the scheduling of pre-trial motions and trial dates.[15] None of the pre-trial scheduling orders in these cases address choice-of-law motions because defendants never advised the court that they would be filing' said `motions.
Defendants have "an obligation to call the applicability of another state's law to the court's attention in time to be properly considered." Kuxel v. Walter E. Heller & Co., 813 F.2A 67, 74 (5th Cir.1987) (internal citation omitted) (emphasis added). This court holds monthly case management conferences to efficiently address issues identified by counsel. The court was surprised to learn on December 7, 2007, upon receipt of Wyeth's motion in Bailey, that choice of law was an issue. On November 27, 2007, during the case management conference regarding the last three bellwether cases, the court scheduled deadlines for the filing of in limine, dispositive and Kemp motions. Unfortunately, defendants' counsel failed to inform the court that choice of law was an issue in the Bailey, DeBoard and Kositsky cases. During the December 19, 2007 case management conference, defendants' counsel agreed that given the choice-of-law issues, it would be in the best interests of the court and counsel to adjourn the trial dates and modify the pre-trial motion deadlines. The court was obliged to modify the filing deadlines of in limine, dispositive and Kemp motions and adjourn the trial dates. The court would have scheduled *864 all choice-of-law motions prior to any pre-trial or substantive motions if the issue had been identified earlier.
Although Upjohn's counsel stated at oral argument that choice-of-law issues should be raised at the "first available moment," counsel for neither defendant was able to offer, a good reason for not asserting the choice-of-law defense earlier. Nothing occurred in the litigation of these cases to inhibit defendants from timely pursuing a choice-of-law defense. Defendants had ample opportunity to timely inform the court of this legal issue, but did not. Defendants' inaction caused the parties to expend substantial time[16] energy, and money preparing for trial with the understanding that the court would apply New Jersey law.
Choice-of-law issues color the available defenses and standard of proof in a products liability action. Therefore, a choice-of-law issue should be raised as soon as prudently possible to avoid prejudice, surprise, waste and delay. As defense counsel stated during oral argument "the earlier the better." Early determination of a choice-of-law issue allows the parties to develop appropriate legal strategy and efficiently conduct discovery. Defendants' counsel argue that plaintiffs' counsel should not be surprised or prejudiced by the choice-of-law motions. Defendants' counsel presented instances where plaintiffs' counsel were aware of the choice-of-law issue during other HRT cases in New Jersey. Furthermore, defendants argue that filing suit in New Jersey was a strategic determination made by plaintiffs' counsel after evaluating the potential states' applicable laws. Plaintiffs' counsel denied such, stating they "never even considered [another state's law]."
Plaintiffs' counsel explained the burden placed upon plaintiffs, if at this late stage, another state's laws were to apply. "Plaintiffs will need to file an amended complaint detailing claims under that state's laws, potentially obtain discovery as to any specific claims that may differ (assuming the court finds conflicts) and prepare and file new expert reports based on the standards of that state's laws." Without second guessing the necessary trial preparation or strategy of plaintiffs' counsel, it is clear that defendants' failure to raise the choice-of-law issue prior to the scheduling of trial dates and completion of significant discovery, particularly after the service of all expert reports, creates undue prejudice. The court's decision, however, does not rest solely upon the surprise allegedly suffered by plaintiffs.
At this late stage, no public policy interest exists to justify deciding the choice-oflaw issue based on the merits. Defendants participated in the extended and expensive litigation process for a significant period of time before specifically raising the choice-of-law issue in the three cases at bar. Defendants' conduct is inconsistent with reliance on the defense that another state's law should apply to the instant cases. Defendants' rights are not infringed by New Jersey law governing. Defendants maintain the right to defend against these actions. To date, a jury has not yet reached a verdict in any of the HRT cases pending in the courts of New Jersey. As outlined in Rowe, supra, 383 N.J.Super. at 450-51, 892 A.2d 694, the court has the discretion to consider and grant untimely choice-of-law *865 motions. However, unlike Rowe, the cases at bar are designated a mass tort. A delay in these bellwether HRT cases would have a cascading affect, creating unnecessary delay for the remaining 166 HRT cases before this court. To prevent undue prejudice to plaintiffs and to avoid any interference with the administration of justice, defendants' motions are denied.

a. Bailey v. Wyeth, Inc.
An initial trial date was set for January 14, 2008, pursuant to the court order dated February 2, 2007. The court rescheduled the trial date to February 25, 2008, by order dated June 20, 2007. Fact discovery was to be completed by September 14, 2007, pursuant to the court order dated June 19, 2007. Defendants filed the instant motions in December 2007, ten months after the scheduling of a trial date. Defendants had sufficient knowledge and time to raise the choice-of-law issue prior to the December 7 and 17, 2007, filing of the instant motions. By June 2005, defendants had plaintiffs' fact sheet and amended complaint. The initial fact sheet disclosed Texas as the state where plaintiffs have resided since 2000, and Dora's injury was discovered and treated.[17] Contrary to Wyeth's assertion, no divination or guessing was required to identify a potential choice-of-law issue. Dora had expressly informed defendants of her residence, treatment and contacts with Texas in the complaint and fact sheet. Additional information was provided to defendants at plaintiffs' depositions on June 22, 2006. A year-and-a-half passed after plaintiffs' depositions and the filing Of the instant choice-of-law motions.

b. DeBoard v. Wyeth, Inc.
This case was consolidated with Kositsky v. Wyeth, Inc., for trial.[18] The initial trial date was set for November 26, 2007, pursuant to the court order dated February 15, 2007. The court rescheduled the trial date to April 7, 2008, by order dated June 20, 2007. Fact discovery was to be completed by October 15, 2007, pursuant to the court order dated June 19, 2007. Defendants filed the instant motion, on December 19, 2007, and January 9, 2008, ten months after the scheduling of a trial date. Defendants had sufficient knowledge and time to raise the choice-of-law issue far in advance of the filing of the instant motions. By February 2005, defendants had plaintiffs initial fact sheet and amended complaint which disclosed Kentucky as the state where plaintiff resided, ingested HRT and was treated for breast cancer. Additional information was provided to defendants at plaintiffs deposition on July 13, 2006 and in the amended fact sheet on October 30, 2006. The instant motions were filed after the completion of significant discovery. Expert reports were served, legal strategy developed and a trial date scheduled.

c. Kositsky v. Wyeth, Inc.
This case was consolidated with De-Board v. Wyeth, Inc., for trial.[19] The initial trial date was set for November 26, 2007, Pursuant to the order dated February 15, 2007. The court rescheduled the trial date to April 7, 2008, by order dated
*866 June 20, 2007. Fact discovery was to be completed by October 15, 2007, pursuant to the court order dated June 19, 2007. Defendants filed the instant motions on December 19, 2007 and January 9, 2008, ten months after the scheduling of a trial date. Defendants had sufficient knowledge and time to raise the choice-of-law issue prior to filing the instant motions. By March 2005, defendants had plaintiffs' fact sheet and complaint. The fact sheet disclosed Pennsylvania as the state where plaintiffs resided prior to 2003, and where Ms. Kositsky ingested HRT and was treated for breast cancer. Additional information was provided to defendants at Ms. Kositsky's deposition on June 1, 2006. Any right reserved by Upjohn's forty-second defense[20] to amend its answer and assert additional affirmative defenses expired in the eighteen months following that deposition. The instant motions were filed after the completion of significant discovery. Expert reports were served, legal strategy developed and a trial date scheduled.

V. Conclusion
Having determined, for the foregoing reasons, that defendants' motions are untimely and consideration of the merits of the choice-of-law issue would cause further unnecessary delay and prejudice, defendants' motions are denied. New Jersey law will apply to all issues in these cases at trial.
NOTES
[1] The additional issues in defendants' reply briefs concerning the learned intermediary doctrine, direct-to-consumer exception and the heeding presumption will not be addressed at this time.
[2] Upjohn's answer identified New Jersey law in the twenty-fifth, thirty-sixth, forty-third, forty-eighth, forty-ninth, fiftieth, fifty-first, fifty-second, and fifty-fourth affirmative defenses.
[3] Dora resided and ingested HRT in Arkansas, Missouri and Texas.
[4] The June 19, 2007 order directed fact discovery to be completed by September 14, 2007; plaintiffs' expert reports to be served by September 27, 2007; defendants' expert reports to be served by November 12, 2007; depositions of all experts to be completed by December 31, 2007.
[5] Upjohn argues in the alternative for Michigan law to apply because the Provera ingested was manufactured, labeled and distributed from its former headquarters in Michigan. Contrary to Upjohn's assertion, application of New Jersey law is not arbitrary or unfair because Upjohn's current headquarters and principal place of business are in New Jersey.
[6] Upjohn's answer to the second amended complaint identified New Jersey law in the thirty-sixth, forty-first, forty-third, forty-eighth, fiftieth, fifty-first, fifty-second, and fifty-third affirmative defenses.
[7] DeBoard has resided in Kentucky at all points relevant to this litigation, including when she ingested HRT, was diagnosed with breast cancer and filed her complaint.
[8] The June 19, 2007 order directed fact discovery to be completed by October 15, 2007; plaintiffs' expert reports to be served by November 1, 2007; defendants' expert reports to be served by December 17, 2007; depositions of all experts to be completed by January 28, 2008.
[9] Upjohn's argument in the alternative to apply Michigan law is not persuasive. See supra, note 5.
[10] Wyeth cited New Jersey law in its sixth, sixteenth, thirty-seventh, thirty-eighth, thirty-ninth, fortieth, forty-first, and forty-second separate defenses.
[11] Ms. Kositsky resided in Pennsylvania when she ingested HRT. She was diagnosed and treated for breast cancer in Pennsylvania. At the time of filing her complaint, and presently, she resides in Florida.
[12] The June 19, 2007 order directed fact discovery to be completed by October 15, 2007; plaintiffs' expert reports to be served by November 1, 2007; defendants' expert reports to be served by December 17, 2007; depositions of all experts to be completed by January 28, 2008.
[13] Upjohn's argument in the alternative to apply Michigan law is not persuasive. See supra, note 5.
[14] See Georgine v. Amchetn Prods., Inc., 83 F.3d 610, 627 (3d Cir.1996), aff'd, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ("The states have different rules governing the whole range of issues raised by the plaintiffs' [products liability] claims"); see also Castano v. Am. Tobacco Co., 84 F.3d 734, 743 (5th Cir.1996) ("products liability law also differs among states"); Dragon v. Vanguard Indus., Inc., 277 Kan. 776, 89 P.3d 908, 917 (2004) ("there is a wide variance in the laws of various states regarding . . . products liability theories and various affirmative defenses thereto").
[15] Assuming that defendants were unable to ascertain whether they had a legitimate choice-of-law issue until the completion of all discovery, defendants still failed to timely advise the court of this pending legal issue. Defendants, however, concede that all discovery (i.e. expert and damage discovery) is not needed in order to file a choice-of-law motion.
[16] Defendants actively participated in litigation and allowed three and a half years in Bailey v. Wyeth, Inc., approximately four years in DeBoard v. Wyeth, Inc., and over three years in Kositsky v. Wyeth, Inc., to pass between filing its initial Answers and the instant motions.
[17] The amended fact sheet provided on March 30, 2006 was not materially different from the initial fact sheet.
[18] At the December 19, 2007 case management conference, the court expressed great concern about conducting a consolidated trial of different out-of-state plaintiffs' claims because of the need to give jury instructions on the laws of multiple states and the likelihood for confusion.
[19] See supra, note 18.
[20] Upjohn's forty-second defense reads, "[t]he Answering Defendants hereby give notice that they intend to rely upon such other affirmative defenses as may become available or known to them during the course of disclosure and discovery and they reserve the right to amend this Answer to assert any such defenses."