# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00944-COA

CHARLES SHORTIE                                                                 APPELLANT

v.

ROCHELLE GEORGE, INDIVIDUALLY AND                              APPELLEE
AS THE PERSONAL REPRESENTATIVE FOR
AND ON BEHALF OF THE WRONGFUL
DEATH BENEFICIARIES OF ONER K.
SHORTIE, DECEASED

| | |
|---|---|
| DATE OF JUDGMENT: | 06/01/2015 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM R. STRIEBECK |
| | ROBERT A. BIGGS III |
| ATTORNEY FOR APPELLEE: | JAMES BYRNES GRENFELL |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| TRIAL COURT DISPOSITION: | GRANTED MOTION TO DISTRIBUTE FUNDS TO WRONGFUL-DEATH BENEFICIARIES AND HELD THAT PARTIES WAIVED CHOICE-OF-LAW ISSUE |
| DISPOSITION: | AFFIRMED AND REMANDED: 05/23/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., FAIR AND WILSON, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     This appeal considers whether Mississippi or South Carolina law should govern the

distribution of settlement funds in a wrongful-death action where a South Carolina resident

was killed in a motor-vehicle accident in Mississippi.  The circuit court determined that

Mississippi law would govern who the proper beneficiaries were and the amount each would

take.  We affirm and remand for further proceedings consistent with this opinion.

FACTS AND PROCEDURAL HISTORY

¶2.     Charles and Oner Shortie were married residents of South Carolina.  Oner had five adult children from a previous marriage: Rochelle George, Stephanie Nobles, Erlene Alexander, Rebecca Rogers, and Kristopher Alexander.  On March 26, 2014,  Charles and Oner were involved in an accident in Sunflower County, Mississippi.  Oner died as a result of the injuries she sustained.

¶3.     On April 3, 2014, Rochelle filed a complaint in the Circuit Court of Sunflower County, Civil Action No. 2014-0088.  Rochelle filed the complaint individually and as the personal representative of the decedent.  The complaint asserted a wrongful-death action, pursuant to Mississippi Code Annotated section 11-7-13 (Rev. 2004), and demanded damages for the benefit of Oner's wrongful-death beneficiaries.

¶4.     In May 2014, Charles filed a petition for formal probate of Oner's estate in South Carolina.  In August, the South Carolina court appointed Charles as the personal representative of Oner's estate.  The court also ruled that Oner died intestate and determined that Oner's only known heirs were Charles and Oner's five adult children from a previous marriage.

¶5.     On September 8, 2014, Charles's attorneys entered their appearance in Rochelle's lawsuit.  Charles's pleading also expressly "join[ed] in the complaint filed . . . by Rochelle . . . as personal representative on behalf of all wrongful-death beneficiaries of Oner."  In February 2015, Charles filed his own complaint in the circuit court, Civil Action No. 2014-

0271. Charles was the only named plaintiff, and he demanded the recovery of damages for his personal injuries sustained in the accident, which included past, present, and future mental anguish; pain and suffering as a result of his injuries; medical bills resulting from his injuries; and lost wages. The complaint also requested damages for bystander liability. Charles's complaint did not demand any damages on behalf of or for Oner's wrongful-death beneficiaries.

¶6. After the parties agreed to consolidate the two cases, the circuit court then referred the case to mediation. A successful mediation was held on April 15, 2015. The parties reached a settlement agreement. However, the next day, Charles's attorneys informed Rochelle's attorney that Charles intended to pursue distribution of the wrongful-death settlement proceeds to the beneficiaries under the law of South Carolina. Under South Carolina law, Charles would be entitled to receive fifty percent of the settlement funds, and Oner's children would share the remaining fifty percent. S.C. Code Ann. §§ 62-2-102 (2014). Under Mississippi law, Charles and Oner's children would receive equal shares. Miss. Code Ann. § 11-7-13 (Rev. 2004).

¶7. On April 20, 2015, Rochelle filed a motion to approve the settlement and distribute the settlement proceeds to the wrongful-death beneficiaries. In this motion, Rochelle asserted that Mississippi law governed the distribution. Charles responded with a motion for a declaratory judgment, claiming that South Carolina law governed the distribution. Rochelle points out that this was the first pleading in which Charles claimed that there was a choice-of-law issue before the circuit court.

3

¶8. On April 30, 2015, the circuit judge issued a twelve page, single spaced order that decided the pending motions. The circuit judge concluded:

> Balancing all of the above elements, this court finds [that] Mississippi has the most significant relationship with the occurrence and with the parties. That South Carolina has any interest has not been "expressly shown" by any party. The parties waived this issue by not raising the same in a timely manner. Even if this had been timely raised, Mississippi [r]ules of intestate succession apply to personal property located in Mississippi. Even if the complaints were somehow construed as being [an] action for [or] on behalf of the Estate of Oner Shortie, Mississippi laws still apply to intestate succession of personal property for a nonresident decedent.

¶9. On June 1, 2015, the circuit judge executed a final declaratory judgment. It read:

> Wherefore, the court hereby declares that the proper allocation of the wrongful[-]death proceeds of Oner K. Shortie, deceased, be distributed to the wrongful[-]death beneficiaries under section 11-7-13 of the Mississippi Code of 1972, Annotated as [a]mended, with each of the six (6) heirs receiving one-sixth (1/6) of the wrongful[-]death benefits.

The circuit judge also added the following language in his own handwriting: "Pursuant to Rule 54(b) [of the Mississippi Rules of Civil Procedure] the Court expressly determines that there is no just reason for delay in entering Final Judgment as to the parties[,] and the Clerk is directed to enter this order as a Final Judgment." It is from this judgment that Charles now appeals.

## ISSUES PRESENTED

¶10. Charles identified the following issues on appeal:

> I. The trial court erred as a matter of law when it failed to apply a proper choice-of-law analysis when it determined Mississippi law and not South Carolina law applied to the distribution of wrongful[-]death proceeds.
>
> II. The trial court erred as a matter of law when it determined Charles

4

Shortie "waived" his right to raise the conflicts[-]of[-]law issue.

III.    The trial court erred as a matter of law when it allowed a party to add documents to the record in violation of Rule 10(f) [of the Mississippi Rules of Appellate Procedure].

## STANDARD OF REVIEW

¶11.    All of the issues raised in this appeal are purely questions of law. This appeal raises no questions of fact. We review a trial court's conclusions of law de novo. *In re Estate of England*, 846 So. 2d 1060, 1064 (¶12) (Miss. Ct. App. 2003).

## ANALYSIS

¶12.    The review of every wrongful-death claim in Mississippi begins with section 11-7-13 and *Long v. McKinney*, 897 So. 2d 160 (Miss. 2004). Section 11-7-13 is the statutory authority for a wrongful-death claim, and it defines the beneficiaries who are entitled to recover damages. In *Long*, the supreme court provided an in-depth, comprehensive review of and guidance for wrongful-death litigation in Mississippi. The court recognized that there were "many troubling issues related to wrongful-death litigation. The same issues and problems continually appear, and have been addressed on an ad hoc basis, leaving little in the way of dependable precedent." *Long*, 897 So. 2d at 163 (¶3). The supreme court noted: "Today, we are provided an opportunity to address and clarify several of these problems, and to provide guidance for these issues to the bar and judiciary." *Id.* at (¶4). The court then concluded:

> However, for several reasons, we must reject the proposition that the first heir to reach the courthouse with a lawyer will "control the litigation" to the exclusion of participation by other heirs who wish to join with other counsel of their choosing.

Perhaps the most glaring fallacy in such a policy is the potential for conflicts of interest which – should a view contrary to our view today prevail – would be both legislatively ordered and court sanctioned.

We are persuaded that, absent the [wrongful-death s]tatute, wrongful[-]death litigation would be reasonably uncomplicated. The rules to be followed are not substantially different from those which apply to any personal-injury suit where multiple plaintiffs pursue a claim against one or more defendants. Such matters as joinder, "[c]ontrol of the litigation," and participation by counsel, are left to the sound discretion of the trial judge. We observe few problems with such cases, and we are confident that today's decision will bring wrongful[-]death litigation to its rightful place under the Mississippi Rules of Civil Procedure.

*Id.* at 178 (¶¶76-78).

¶13.   Here, as in *Long*, we have an experienced and learned trial judge.  Likewise, the lawyers for Oners' children and Charles are experienced in complex litigation and are excellent lawyers.  Indeed, consistent with *Long's* guidance, they have worked together reasonably well to pursue this litigation and obtain a substantial settlement.  We turn to the issues raised.

> I.      *The trial court erred as a matter of law when it failed to apply a proper choice-of-law analysis when it determined Mississippi law and not South Carolina law applied to the distribution of wrongful-death proceeds.*

¶14.   Charles argues that South Carolina law governs the distribution of the settlement proceeds.  He claims the circuit judge made an incorrect choice-of-law decision.  Rochelle disagrees and argues that the circuit judge was correct to apply Mississippi law.  If not, Rochelle claims that Charles waived the issue.

> A.      *Circuit Court's Analysis*

¶15.   The relevant language in the April 30, 2015 order is the following ruling:

Balancing all of the above elements, this court finds [that] Mississippi has the most significant relationship with the occurrence and with the parties. That South Carolina has any interest has not been "expressly shown" by any party. The parties waived this issue by not raising the same in a timely manner. Even if this had been timely raised, Mississippi [r]ules of intestate succession apply to personal property located in Mississippi. Even if the complaints were somehow construed as being an action for [or] on behalf of the Estate of Oner Shortie, Mississippi laws still apply to intestate succession of personal property for a nonresident decedent.

The circuit court made three rulings. First, the court made a decision on the choice-of-law issue and ruled that Mississippi law applies to the distribution of the wrongful-death settlement proceeds. Second, Charles waived the issue because he did not raise it in a timely manner. Third, the Mississippi laws of intestate succession apply because the settlement proceeds are personal property.

¶16. The judge was incorrect to consider the laws of intestate succession. Our supreme court has held that the wrongful-death "statute creates a new cause of action that accrues at [the] death [of the decedent] in favor of the heirs listed in the statute." *England*, 846 So. 2d at 1066 (¶16). "Therefore, a wrongful[-]death action cannot become a part of the wrongful [-]death victim's estate except in the circumstance when, as provided by the statute, no statutory heirs survived the wrongful[-]death victim." *Id.* at 1067 (¶19). In other words "[t]he deceased may not devise that which he does not have." *Id.*

¶17. At oral argument, Rochelle's attorney agreed that the circuit judge was in error for this part of his ruling. We find that the circuit judge erred in the ruling that included the last two sentences of the order quoted above. But this does not affect the outcome of this appeal.

B. *Choice-of-Law Principles*

7

¶18. Charles and Rochelle presented a true conflict between the laws of Mississippi and South Carolina. Section 11-7-13 provides that "damages for the injury and death of a married woman shall be *equally distributed* to the husband and children." (Emphasis added). Thus, under Mississippi law, Charles would receive one-sixth of the settlement proceeds, and each of Oner's five children would receive one-sixth. Under South Carolina law, the wrongful-death recovery is to be distributed according to the laws of intestate succession. S.C. Code Ann. § 15-51-40 (1996). Thus, under South Carolina law, Charles would receive one-half of the settlement proceeds, and Oner's five children would receive the other half. S.C. Code Ann. §§ 62-2-102, -103 (2014).

¶19. "[A] choice[-]of[-]law analysis arises only when there is a true conflict between the laws of two states, each having an interest in the litigation." *Zurich Am. Ins. v. Goodwin*, 920 So. 2d 427, 432 (¶8) (Miss. 2006). Recently, in *Williams v. Clark Sand Co.*, 212 So. 3d 804, 809 (¶¶17-18) (Miss. 2015), the Mississippi Supreme Court held:

> The center-of-gravity analysis is a choice-of-laws mechanism that this Court uses to resolve conflicts of law. *Mitchell v. Craft*, 211 So. 2d 509, 515 (Miss. 1968) ("This doctrine is a rule whereby the court trying the action applies the law of the place which has the most significant relationship to the event and parties, or which, because of the relationship or contact with the event and parties, has the greatest concern with the specific issues with respect to the liabilities and rights of the parties to the litigation." (citing 15A C.J.S. *Conflict of Laws* 8(2) (1967))); *see also Zurich*, 920 So. 2d at 433; Restatement (Second) Conflict of Laws §§ 145, 146 (Am. Law Inst. 1971). . . .
>
> Where there is a conflict of laws, Mississippi follows the *Restatement (Second) Conflict of Laws*.

(Internal citations omitted).

¶20. "In determining which [s]tate's law to apply, Mississippi relies on the 'center of

8

gravity' doctrine of the Restatement." *Zurich,* 920 So. 2d at 433 (¶10) (citing *Mitchell*, 211 So. 2d at 510). This doctrine is described as:

> [A] rule whereby the court . . . applies the law of the place which has the most significant relationship to the event and parties, or which, because of the relationship or contact with the event and parties, has the greatest concern with the specific issues with respect to the liabilities and rights of the parties to the litigation.

*Id.* In this wrongful-death action, we will first apply the law of the state where the injury occurred in order to determine the rights and liabilities of the parties. *Mitchell,* 211 So. 2d at 516. However, if we find that another state has a more significant relationship to the occurrence and the parties, then we will ultimately apply the law of the other state. *Id.*

¶21. In *McDaniel v. Ritter*, 556 So. 2d 303, 310 (Miss. 1989), the supreme court itemized the "[c]ontacts to be taken into account [when] applying the principles . . . to determine the applicable law." These contacts include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, (d) the place where the relationship, if any, between the parties is centered. *Id.* (citation omitted). "These contacts are evaluated according to their relative importance with respect to the particular issue." *Id.*

### C. Application of Choice-of-Law Principles

¶22. Rochelle argues that Mississippi law is the only applicable law in this case. She claims that (1) all the events occurred in Mississippi, (2) the wrongful-death lawsuit was filed in Mississippi, and therefore, (3) Mississippi law governs the issue on appeal. She also claims that South Carolina does not have the most substantial relationship to either the parties

9

or the decedent.

¶23. As to Rochelle's claim that Mississippi law controls every issue in the case, the supreme court has held that "the law of a single state does not necessarily control every issue in a given case. We apply the center[-]of[-]gravity test to each question presented . . . ." *Boardman v. United Servs. Auto. Ass'n*, 470 So. 2d 1024, 1031 (Miss. 1985).

¶24. Mississippi law controlled whether the defendants were negligent, and whether the plaintiffs were entitled to recover. However, the question here only involves the distribution of the wrongful-death settlement proceeds. We must consider the factors relevant to this choice-of-law issue and evaluate the contacts "according to their relative importance with respect to the particular issue." *McDaniel*, 556 So. 2d at 310.

> *(a) The place where the injury occurred.*

> *(b) The place where the conduct causing the injury occurred.*

¶25. The injury and the conduct causing the injury occurred in Mississippi.

> *(c) The domicile, residence, nationality, place of incorporation, and place of business of the parties.*

¶26. The domicile and residence of Oner and Charles was South Carolina. Also, at the time of her death, two of Oner's children were living with them in South Carolina. Thus, as of her death, the decedent and three of her wrongful-death beneficiaries were domiciled in and residents of South Carolina. At the time of the settlement, Charles was the only resident of South Carolina, and the remaining five beneficiaries lived in other states. None of the beneficiaries ever lived in Mississippi.

> *(d) The place where the relationship, if any, between the parties*

10

*is centered.*

¶27. As of the date of her death, the place of the relationship between the parties was centered in South Carolina. Oner, Charles, and two of Oner's children resided there.

### D. Mississippi Cases

¶28. In *Mitchell*, two Mississippi residents died as the result of an automobile accident in Louisiana. *Mitchell*, 211 So. 2d at 510. A wrongful-death lawsuit was filed in Mississippi, and a counterclaim was also filed. *Id.* The circuit-court judge gave the plaintiff a peremptory instruction on liability and on Mitchell's counterclaim. The jury rendered a verdict in the amount of $12,000 against the defendant, which was appealed. *Id.* The court identified the issue as follows:

> We are concerned here with two wrongful[-]death actions[], involving Mississippi residents and their Mississippi estates, and arising from a two-car collision [that] occurred in the State of Louisiana. The Mississippi administratrix of the estate of one of the decedents sued, in a Mississippi court, the Mississippi administratrix of the estate of the other decedent, who in turn filed a counterclaim against the plaintiff. Both parties alleged negligence by the other's decedent, and that such negligence was a contributing cause of the respective deaths. The question is, which state's law is applicable– Mississippi or Louisiana?

*Id.* at 512. The court had to decide whether to apply Mississippi's law on comparative negligence or Louisiana's law of contributory negligence, which would have barred the recovery. *Id.* at 510. The supreme court ruled:

> This case involves a choice-of-law or conflict-of-law problem in an action for wrongful death resulting from an automobile accident, in which plaintiff's decedent and defendant's decedent were in separate cars. Both decedents were domiciled in Mississippi, their estates are being administered here, and whatever expectations they might have had were centered in Mississippi. This State has a comparative negligence statute and Louisiana has the common-law

11

rule by which contributory negligence bars recovery. We modify the previously existing rule in this jurisdiction, which applied invariably the law of the place of injury, and hold that under the factual situation existing in this case, the most substantial relationships of the parties and the dominant interest of the forum require application of Mississippi law . . . .

*Id.* Then, the court reasoned:

A primary consideration in determining applicable law is the advancement of the forum's governmental interests. Mississippi's interests in the present controversy are evident, while Louisiana has none. The parties were residents of Mississippi, and no citizen of Louisiana is involved. If there is any recovery on a new trial, it will be by a Mississippi plaintiff-administratrix or a defendant-administratrix as counterclaimant, acting as officers of a Mississippi court for the benefit of Mississippi citizens. This state is especially concerned with the protection of its injured domiciliaries and their families, and the distribution of its domiciliaries' estates. The law selected and applied in this case will determine the effect of the contributory fault, if any, of plaintiff's and counterclaimant's decedents. It will determine whether this negligence, if any, will preclude plaintiff or counterclaimant from recovery. It is this Court's duty to further this State's governmental interests. The comparative[-]negligence statute of this State has been effectively administered for many years and we have an interest in applying it to Mississippi residents.

Finally, an important consideration is application of the better rule of law. We believe in our own law in this instance. Comparative negligence, although utilized in diverse ways in only seven states, is a fairer and more economically equitable standard of liability than that of the common-law rule of contributory negligence.

This analysis leads quite definitely, we think, to the application of the substantive law of Mississippi in this case. These relevant choice-of-law or conflict-of-law considerations are factual, realistic, and can be tested by a qualitative process of evaluation.

*Id.* at 514.

¶29.    The court determined that Mississippi possessed the dominant interest of the two forums, and held that "Louisiana's sole relationship with the occurrence [was] the *purely adventitious circumstance* that the collision happened there." *Id.* at 513 (emphasis added).

12

¶30. More recently, the supreme court considered a choice-of-law issue in a case with facts very similar to this case. *In re Estate of Blanton*, 824 So. 2d 558 (Miss. 2002) (overruled on other grounds as recognized by *Clark v. Neese*, 131 So. 3d 556, 562 (¶21) (Miss. 2013)).

¶31. Bryce and Juanita Blanton were married residents of Mississippi. *Id.* at 559 (¶1). There were killed in an automobile accident while they were on vacation in Arkansas. *Id.* Bryce and Juanita had no children together, and they were survived by their adult children from previous marriages. *Id.* at 561 (¶7).

¶32. Bryce's will was probated in Hinds County Chancery Court. *Id.* at 559 (¶1). His will provided that, if Juanita predeceased him, his estate would be distributed equally among Bryce's children from a previous marriage (Tonita Gonzales and Tim Blanton), and Juanita's children from a previous marriage (Steven DeFord, Charles DeFord, and Kimberly Burrell). *Id.* at 561 (¶8). Bryce's will also named Tonita and Juanita's adult sister as his co-executrixes. *Id.* at (¶1). They filed a wrongful-death lawsuit in an Arkansas federal court. The lawsuit was settled for two million dollars. *Id.*

¶33. In the Hinds County Chancery Court, the co-executrixes filed a petition to determine heirs and wrongful-death beneficiaries, and a petition for authority to settle doubtful claims, disbursement of attorneys' fees, and distribution of settlement proceeds. *Id.* They claimed that Arkansas law should apply because the deaths occurred in Arkansas. *Id.* at 559 (¶2). Also, they stated that there was an agreement for the distribution of the settlement proceeds. *Id.* The agreement was to divide the net settlement proceeds equally between Bryce's and Juanita's estates. *Id.* at 559-60 (¶2). Then, based on Arkansas law, Bryce's portion would

13

be divided between his two adult children and his five living brothers and sisters. *Id.* at 560 (¶2). Juanita's share of the proceeds was dispersed in a separate civil action and was not a part of the appeal. *Id.*

¶34. Tim, Bryce's son, filed an objection on the day of the scheduled hearing. *Id.* at (¶3). The chancellor continued the hearing, and Tim later filed a petition that objected to the application of Arkansas law. *Id.* at (¶4). After a hearing, the chancellor determined that Arkansas law applied and ordered the distribution of twenty-five percent to each of Bryce's two children, and ten percent to each of Bryce's five siblings, or their estates. *Id.* at (¶5). Tim appealed and the only issue was the distribution of Bryce's share of the wrongful-death-settlement proceeds. *Id.* at 561 (¶9). Under Arkansas law, Bryce's children and his siblings were beneficiaries. *Id.* at (¶12). Under Mississippi law, only Bryce's children were beneficiaries. *Id.*

¶35. The court then held:

> Just as in *Mitchell*, Arkansas' sole relationship with the occurrence is *the purely adventitious circumstance that the accident happened there.* Bryce's children correctly argue that Mississippi clearly has the most substantial contacts in the present case . . . .
>
> Applying the rule of *Mitchell*, it is clear that Mississippi substantive law must be applied to the case sub judice. First, Bryce and Juanita were domiciled in Mississippi. All of Bryce's brothers and sisters are domiciled in Mississippi. Tim is domiciled in Mississippi (Tonita lives in California). In fact, both decedents and six of the seven parties to this suit are domiciled in Mississippi; none are domiciled in Arkansas. Second, Bryce's estate is being administered in Mississippi. Third, whatever expectations Bryce might have had were centered in Mississippi. Bryce's last will and testament was drafted and witnessed in Hinds County, Mississippi. In his will, Bryce directed that if he and his wife died, he wanted the balance of his estate to be distributed equally among their five children. Nowhere does Bryce make provision for part of his

estate to be distributed to his siblings. It would be fair to say that Bryce's justified expectations were that, upon his death, his estate would be distributed equally to his children, not half to his children and half to his siblings. Mississippi law would provide for that outcome; Arkansas law would not. As in *Mitchell*, under the factual situation existing in this case, the most substantial relationships of the parties and the dominant interest of the forum require application of Mississippi law.

*Id.* at 562-63 (¶¶14-15). It is important to note that, in the choice-of-law analysis, the court gave great importance to the domicile of the parties, the fact that the decedent's "estate [was] being administered in Mississippi," and the fact that the expectations of the decedent "centered in Mississippi." *Id.* at 562 (¶15). Also, the supreme court found that "Arkansas' sole relationship with the occurrence [was] the purely adventitious circumstance that the accident happened there." *Id.* at (¶14).

¶36. In both *Mitchell* and *Blanton*, the supreme court declined to apply the laws of the state where the accident occurred and the death/injuries occurred. Instead, the supreme court instructed that, in choice-of-law decisions, we are to look carefully at each state's contacts, determine which state had the most significant relationships of the parties, and conclude which state has the dominant interest between the forums.

¶37. Because the issue before us is a legal question, our review is de novo. We are not required to defer to the trial court's decision. When we consider the contacts, we recognize that (a) the place where the injury occurred and (b) the place where the conduct causing the injury occurred was Mississippi. However, we also recognize that (c) the domicile and residence and (d) the center of the parties' relationship is in South Carolina. Consistent with *Mitchell* and *Blanton*, we find that South Carolina has the dominant interest because South

Carolina was the domicile of Charles, Oner, and two of her children, as determined at the time of her death. None of the potential beneficiaries are residents of Mississippi. Also, Oner's estate was probated in South Carolina, and her heirs were established under South Carolina law. We find that Oner's expectations were centered in South Carolina, not Mississippi.

¶38. Mississippi only has a small interest in the distribution of the settlement among the potential beneficiaries. As discussed in *Mitchell* and *Blanton*, Mississippi's "sole relationship with the occurrence is the purely adventitious circumstance that the accident happened there."

¶39. We find that the choice-of-law analysis requires that the law of South Carolina apply to the distribution of the wrongful-death proceeds. We find the circuit court in error on this issue.

> II. *The trial court erred as a matter of law when it determined Charles "waived" his right to raise the conflicts-of-law issue.*

¶40. We also recognize that the trial court held that Charles waived his right to raise the choice-of-law issue. The April 30, 2015 order ruled: "The parties waived this issue by not raising the same in a timely manner."

¶41. Charles argues that the circuit judge incorrectly cited *Owens v. Mississippi Farm Bureau Casualty Insurance*, 910 So. 2d 1065 (Miss. 2005). In *Owens*, Linda Owens filed a direct action against her uninsured motorist carrier. *Id.* at 1068 (¶8) The issue of waiver of a right to assert application of Tennessee law by the uninsured-motorist carrier was raised by the plaintiff for the first time on appeal. *Id.* at (¶12). The court held there was no waiver

16

of the choice-of-law issue because the issue of which state's law should apply was clearly placed before the trial court. *Id.* at 1072 (¶25). Charles claims that he "clearly place[d]" the choice-of-law issue squarely before the trial court in his cross-motion for a declaratory judgment, which he filed after the settlement agreement was reached.

¶42. Charles argues that he raised the choice-of-law issue when it became relevant and applicable to the case. He contends that there was no reason to dispute which state's law applied to the distribution of the wrongful-death proceeds prior to the settlement agreement.

¶43. Rochelle argues that the question of waiver is "the single most important issue that this court should consider before addressing the conflict-of-laws issue." She cites the principle that the "failure to timely and reasonably raise and pursue the enforcement of any . . . affirmative matter or right" constitutes a waiver. *Miss. Credit Ctr. Inc. v. Horton*, 926 So. 2d 167, 180 (¶44) (Miss. 2006).

¶44. In *Horton*, the trial court denied a motion to compel arbitration. *Id.* at 171 (¶1). Catherine Horton filed her lawsuit on December 27, 2002. *Id.* at 172 (¶6). The defendant did not include arbitration as an affirmative defense in its original answer, but did in its July 7, 2003 answer to an amended complaint. *Id.* at (¶7). Then, on March 16, 2004, the defendant filed a motion to compel arbitration. *Id.* at 173 (¶10). The supreme court held:

> The record before us today clearly demonstrates that the [d]efendants asserted their right to compel arbitration in their respective answers. However, rather than proceeding within a reasonable time to file a motion to compel arbitration and request a hearing on the motion, defendants proceeded to substantially engage the litigation process by consenting to a scheduling order, engaging in written discovery, and conducting Horton's deposition. Horton asserts that this participation in the lawsuit constituted a waiver of the [d]efendants' right to compel arbitration. Although participation in the litigation is an important

factor to be considered, more is required to constitute a waiver. Horton also asserts that [d]efendants waived the right to compel arbitration by their unreasonable delay in bringing the issue before the trial court for adjudication. *We find that, ordinarily, neither delay in pursuing the right to compel arbitration nor participation in the judicial process, standing alone, will constitute a waiver.* That is to say, a party who invokes the right to compel arbitration and pursues that right will not ordinarily waive the right simply because of involvement in the litigation process, and a party who seeks to compel arbitration after a long delay will not ordinarily be found to have waived the right where there has been no participation in, or advancement of, the litigation process.

*However, where – as here – there is a substantial and unreasonable delay in pursuing the right, coupled with active participation in the litigation process, we will not hesitate to find a waiver of the right to compel arbitration.*

The amended complaint was filed on May 5, 2003. The [i]nsurance [d]efendants filed their answers to the amended complaint on May 23, 2003, and MS Credit filed its answer to the amended complaint on July 7, 2003. The [d]efendants did not file a motion to compel arbitration or otherwise pursue their right to arbitrate until March 22, 2004, a delay of eight months, all the while participating in the litigation process. The [d]efendants have provided no plausible explanation for this delay.

*Our holding today is not limited to assertion of the right to compel arbitration. A defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver*.

*Id.* at 180 (¶¶41-44) (emphasis added) (footnotes omitted).

¶45. Rochelle also argues that the conflict of law between South Carolina and Mississippi over the distribution of settlement proceeds to the wrongful-death beneficiaries is a matter that should be raised promptly. "Early determination of which state law governs a case is essential for judicial economy, efficiency and fairness to the parties." *Bailey v. Wyeth Inc.*, 28 A.3d 856, 860 (N.J. Super. 2008). The *Bailey* court also ruled that "a choice-of-law issue

should be raised as soon as prudently possible to avoid prejudice, surprise, waste and delay."

*Id.* at 864. *See also Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 74 (5th Cir. 1987) (holding that defendants have "an obligation to call the applicability of another state's law to the court's attention in time to be properly considered").

¶46.    In order to consider whether Charles waived his right to assert that South Carolina law should govern the distribution of the proceeds obtained as a result of the wrongful-death claim, we must determine when the issue should properly be brought to the attention of the trial judge.[1]

¶47.    Charles claims that *Blanton* is authority for his decision to wait and bring this matter to the attention of the trial court only after the settlement was obtained.  He is correct that Tim Blanton did not file his objection to the determination of the proper wrongful-death beneficiaries until after the settlement, and as such did not bring the choice-of-law issue to the court's attention until that time.  *Blanton*, 824 So. 2d at 560 (¶4).  In fact, Tim waited until the day the chancery court had a hearing scheduled to approve the settlement and authorize the distribution.  *Id.* at (¶3).  However, we do not find this to be authority on the issue of waiver.  There is no indication in *Blanton* that the co-executrixes or any affected individual asserted that Tim had waived the right to make this claim.

¶48.    To decide this issue, we must first consider when it should or could have been brought to the trial court's attention.  For example, it is expected that the parties' agreement to

---

[1] We agree with Charles that the circuit judge incorrectly cited *Owens*.  Charles is correct that he "clearly place[d]" the choice-of-law issue squarely before the trial court in his cross-motion for a declaratory judgment, which was filed after the settlement agreement was reached.  Charles did not first assert this issue on appeal.

arbitrate is a right that should properly be brought to the court's attention early in the litigation, and any delay or "active participation in the litigation process" will suggest that the right has been waived. *Horton*, 926 So. 2d at 180 (¶42). To answer this question, we examine the guidance in *Long*.

¶49.    In *Long*, the supreme court considered many aspects of the wrongful-death case. The court announced certain procedures and guidance for the attorneys that are instructive here:

> By our decision today and the procedure announced below, we intend to eliminate the inherent conflict of interest and simplify the decisions to be made by trial courts where more than one heir wishes to participate in the litigation to protect their individual interests. We also address the dilemma faced by counsel who have seemingly been forced into the uncomfortable position of representing a client with conflicts of interest.
>
> The resolution of this case requires only that we address appropriate practice and procedure in wrongful[-]death litigation.

*Long*, 897 So. 2d at 171 (¶¶46-47). Then, the court said this about the "[d]etermination of wrongful[-]death beneficiaries":

> Section 11-7-13 provides that wrongful[-]death litigation may be brought by the personal representative of the deceased or by any one or more of several statutory beneficiaries, for the benefit of all entitled to recover. Unless all persons entitled to recover join in the suit, those who do have a fiduciary obligation to those do not. Miss[issippi] Code Ann[otated section] 91-1-27 (Rev. 2004) provides for a chancery determination of the heirs at law of a decedent; that is, those who inherit in the absence of a will. Although our statutes mandate no specific procedure for the identification of wrongful[-]death beneficiaries, a chancery court may make such determinations. ***Those bringing the action, together with their counsel, have a duty to identify the beneficiaries, and they should do so early in the proceedings***.

*Long*, 897 So. 2d at 175-76 (¶67) (emphasis added, footnote omitted). The supreme court followed this with a discussion about the "[c]hoice of attorneys and payment of attorney

20

fees":

> Where, as here, one of the wrongful[-]death beneficiaries proposes to engage counsel and file a wrongful[-]death suit without participation of the personal representative of the decedent and all other beneficiaries, the beneficiary who files suit does so as the representative of all statutory beneficiaries and must, within a reasonable time following the filing of the complaint, provide reasonable notice (i) to all other wrongful[-]death beneficiaries; (ii) to the personal representative of the decedent if one has been appointed; and (iii) to each person who bears a relationship to the deceased specified in section 11-7-13. Such notice should, at a minimum, include the identity of the plaintiffs and defendants, the nature of the claims against those defendants, the identity of counsel representing the plaintiffs, and a copy of the complaint.
>
> In addition, full disclosure is required of any agreement or arrangement for the payment of costs or attorney's fees from the portion of recovery attributable to those receiving such notice. Should the personal representative[] or one or more of the beneficiaries join in the litigation with separate counsel representing their respective interests, the portion of recovery attributable to such claimants shall not be subject to such agreement or arrangement, absent written consent after full disclosure. However, the personal representative or any beneficiary may petition the court for a review of the proposed payment of costs and distribution of attorney fees, and the trial court may equitably adjust and allocate fees among the attorneys based on the quantitative and qualitative contribution of each to the case, provided however, that so long as an attorney is reasonably involved, and makes a reasonable contribution to all aspects of the litigation, no deduction should be made from his or her fees.

*Id.* at 176 (¶¶68-69) (footnotes omitted). The supreme court turned to a discussion on the

"Control of the Litigation—'First to File'":

> In his January 19, 2002[] order denying consolidation, the trial court characterized the phrase, "first to file an action has a right to prosecute it to its conclusion," as an "old established rule," which he held was not "diluted" by *Franklin* [*v. Franklin ex. rel. Phillips*, 858 So. 2d 110, 122 (¶41) (Miss. 2003)], which allowed consolidation of two wrongful[-]death suits for the same death. He believed such consolidation required agreement of the parties. Specifically, the trial court stated, "The Wrongful[-]Death Statute provides for any beneficiary to bring the action in behalf of all beneficiaries and the 'first to file' shall have control of the handling of the case."

21

. . . .

We recognize that ample dicta, and even some direct authority, exists under our prior case law which justifies the conclusions reached by the trial court here and by the federal court in *Rampy* [*ex. rel. Rampy v. Austin*, 718 F. Supp. 556, 561 (S.D. Miss. 1989)]. However, for several reasons, we must reject the proposition that the first heir to reach the courthouse with a lawyer will "control the litigation" to the exclusion of participation by other heirs who wish to join with other counsel of their choosing.

Perhaps the most glaring fallacy in such a policy is the potential for conflicts of interest which—should a view contrary to our view today prevail—would be both legislatively ordered and court sanctioned.

We are persuaded that, absent the [wrongful-death s]tatute, wrongful[-]death litigation would be reasonably uncomplicated. The rules to be followed are not substantially different from those which apply to any personal[-]injury suit where multiple plaintiffs pursue a claim against one or more defendants. Such matters as joinder, "[c]ontrol of the litigation," and participation by counsel, are left to the sound discretion of the trial judge. We observe few problems with such cases, and we are confident that today's decision will bring wrongful[-]death litigation to its rightful place under the Mississippi Rules of Civil Procedure.

*Id.* at 178 (¶¶70, 76-78).

¶50. In this case, the accident that claimed Oner's life occurred on March 26, 2014. Rochelle filed her lawsuit very quickly – on April 3, 2014. In May 2014, Charles filed probate proceedings in South Carolina, and he was appointed the personal representative of Oner's estate in August. On September 8, 2014, Charles entered his appearance in the lawsuit filed by Rochelle, and in February, he filed his own complaint. As noted above, Charles also expressly "join[ed] in the Complaint filed . . . by Rochelle." Rochelle's complaint specifically sought damages under the Mississippi wrongful-death statute. Certainly, as early as May 2014, Charles was represented by lawyers in South Carolina, and

22

could have known the difference in the distribution laws of South Carolina as opposed to Mississippi. This case was settled on April 15, 2015, and the following day, Charles's lawyer told Rochelle's lawyer that they would object to the distribution under Mississippi law and ask the court to apply South Carolina law.

¶51. This litigation lasted just over one year. Rochelle claims that Charles knew of the choice-of-law issue for at least a year and remained silent. Rochelle's lawyer argues that the there was no mention of the choice-of-law issue during the mediation or prior to settlement. Charles's lawyer claims that they did not know that Rochelle's lawyer did not know of their allegation that South Carolina law would apply to the distribution of the settlement proceeds.

¶52. In addition, there is general law that provides that the "[e]arly determination of which state law governs a case is essential for judicial economy, efficiency and fairness to the parties." *Bailey,* 28 A.3d at 860. The *Bailey* court also explained that "a choice-of-law issue should be raised as soon as prudently possible to avoid prejudice, surprise, waste and delay." *Id.* at 864. *See also Kucel,* 813 F.2d at 74 (holding that defendants have "an obligation to call the applicability of another state's law to the court's attention in time to be properly considered").

¶53. We rely primarily on *Long.* There, the supreme court made it clear that any dispute over the "determination of wrongful[-]death beneficiaries" should be decided early in the litigation. *Long*, 897 So. 2d at 175-76 (¶67). Specifically, the court held:

> Section 11-7-13 provides that wrongful[-]death litigation may be brought by the personal representative of the deceased or by any one or more of several statutory beneficiaries, for the benefit of all entitled to recover. Unless all persons entitled to recover join in the suit, those who do have a fiduciary

obligation to those do not. [Mississippi Code Annotated section] 91-1-27 (Rev. 2004) provides for a chancery determination of the heirs at law of a decedent; that is, those who inherit in the absence of a will. Although our statutes mandate no specific procedure for the identification of wrongful[-]death beneficiaries, a chancery court may make such determinations. ***Those bringing the action, together with their counsel, have a duty to identify the beneficiaries, and they should do so early in the proceedings***.

*Id.* (emphasis added, footnote omitted).

¶54. Because we find the "duty to identify the beneficiaries" includes a duty to identify the percentages that the beneficiaries would be entitled to take, we find that Charles was required by *Long* to bring the choice-of-law issue to trial court's attention "early in the proceedings," and he did not. Therefore, we find that the circuit judge was correct to find that Charles waived this issue. As a result, we affirm the trial court's decision to apply Mississippi law to the percentage of distribution by each wrongful-death beneficiary.

¶55. We remand this case for the circuit judge to approve the distributions to the beneficiaries.

> III. *The trial court erred as a matter of law when it allowed a party to add documents to the record in violation of Mississippi Rule of Appellate Procedure 10(f).*

¶56. Based on the Court's ruling above, we find no reason to address this issue and decline to do so.

¶57. **THE JUDGMENT OF THE SUNFLOWER COUNTY CIRCUIT COURT IS AFFIRMED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**ISHEE, FAIR, WILSON AND GREENLEE, JJ., CONCUR. BARNES AND CARLTON, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., AND WESTBROOKS, J., CONCUR IN PART AND**

**DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION. LEE, C.J., NOT PARTICIPATING.**